P=B

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Colleen Elizabeth McGuinn*
*Assistant United States Attorney*
*Colleen.McGuinn@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4823*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

May 21, 2026

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

12:04 pm, Jul 22 2026

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY R.C. Deputy

Mr. Jonathan Hettleman, Esq.
100 S. Charles Street, Suite 900
Baltimore, MD 21201

Re: United States v. Philip Andrew Turner
Criminal No. RDB-25-363

Dear Mr. Hettleman:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Philip Andrew Turner, (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by May 31, 2026, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offenses of Conviction

1. The Defendant agrees to plead guilty to Count Six, of the Indictment, which charges the Defendant with Coercion and Enticement, in violation of 18 U.S.C. § 2422(b). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

## Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

a. Knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so; and

b. That the Defendant could have been charged with a criminal offense for engaging in the specified sexual activity.

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 6 | 18 U.S.C. § 2422(b) | 10 years | life | Life (min. 5y) | $250,000 | $100 and $5,000 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259.

d. Special Assessments: In addition to the mandatory $100 special assessment pursuant to 18 U.S.C. § 3013, the Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

g. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay,

and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crime to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the law of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of

evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree, and stipulate to the Stipulation of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and is incorporated by reference herein. The parties further stipulate and agree, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.2(c), that the Stipulation of Facts establishes the

commission of additional offenses, and the plea agreement shall be treated as if the Defendant had been convicted of additional counts charging those offenses. The parties stipulate and agree to the following applicable sentencing guideline factors:

Groups One through Five: Sexual Exploitation of a Child and Coercion and Enticement (Counts 1 through 10)

a. The applicable base offense level is 32 pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2G2.1(a).

b. Pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a two (2) level increase because the minor had not attained the age of sixteen years.

c. Pursuant to U.S.S.G. § 2G2.1(b)(2), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact

d. Pursuant to U.S.S.G. §2G2.1(b)(6)(B(ii), there is a two (2) level increase because the offense involved the use of a computer or interactive computer service to solicit participation with a minor in sexually explicit conduct.

e. Thus, the subtotal is offense level is 38.

Group Six: Receipt of Child Pornography and Possession of Child Pornography (Counts 11 to 15):

f. The applicable base offense level is 22, pursuant to U.S.S.G. §2G2.2

g. Pursuant to U.S.S.G. §2G2.2(b)(2), there is a two (2) level increase because the materials involve a minor who had not attained the age of twelve years.

h. Pursuant to U.S.S.G. §2G2.2(b)(5), there is a five (5) level increase because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

i. Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material.

j. Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a five (5) level increase because the offense involved 600 or more images.

k. Thus, the subtotal is offense level 36.

Grouping:

l. Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, sexual exploitation of the same minor victim on different days, or of different minor victims, does not group. There are five groups with the highest offense level of 38 (Groups One through Five), and there is one group that is 1 to 4 levels less serious (Group Six), for a total of 6 groups. Thus, pursuant to U.S.S.G. §§ 3D1.4, 5 levels are added to the highest offense level, 38. (Subtotal: 43).

8. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Subtotal: 40).

Chapter Four Enhancement:

9. Pursuant to U.S.S.G. §4B1.5(b)(1), and Application Note 4(B), there is a five-level increase because the instant offense of conviction is covered sex crimes, and the Defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal: 45).

10. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

12. At the time of sentencing, this Office agrees to recommend a sentence of no more than twenty-five (25) years' imprisonment to the Bureau of Prisons and reserves the right to advocate for a reasonable period of supervised release, considering any appropriate factors under 18 U.S.C. § 3553(a).

13. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

14. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii. This Office reserves the right to appeal any sentences below a statutory minimum.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

16. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

17. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a Silver HP Laptop, Model Serial Number 5CD136D517.

18. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

19. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

20. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

16. The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

17. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any

such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Restitution in Cases Involving the Sexual Exploitation of Children

18. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Additional Special Assessments in Sex Crimes Cases

19. Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), because the offense of conviction is under Chapter 117 (relating to transportation for illegal sexual activity and related crimes), the Defendant must also pay an additional special assessment of $5,000, unless the Defendant is indigent.

Defendant's Conduct Prior to Sentencing and Breach

20. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal

Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Court Not a Party

22. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

23. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Colleen Elizabeth McGuinn
Assistant United States Attorney

Rev. August 2018

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

06-30-26
Date

Philip Andrew Turner

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/30/26
Date

Jonathan Hettleman, Esq.

**ATTACHMENT A**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Philip Andrew Turner ("Turner") is a resident of Linthicum Heights, Maryland, and was between 38 and 45 years old at the time of the offenses. From at least November 2017 through March 2018, Turner used the online application Skype to persuade, induce, entice, and coerce minor victims, who were in the Philippines, to engage in sexual activity. Using Skype, Turner would communicate with the trafficker who was selling the minors, and then directly with the minors, as they live-streamed their sexual activity in exchange for monetary payment. The images of the minors were not retained but the live chats that occurred during their interactions with Turner were saved.

Between 2017 and 2023, Turner had approximately 110 Skype calls and exchanged approximately 40 media files with a known Filipino trafficker. The files included images of Filipino children so that Turner could select which child he wanted to see engage in live-stream sexual activity.

Turner used online transactions through World Remit to pay for the live streams. World Remit records reflect that between 2017 and 2023, Turner made 154 successful payments totaling over $12,000 to the Philippines.

Group One – Sexual Exploitation of a Minor and Coercion and Enticement – November 20, 2017 (Counts 1 and 6)

On November 20, 2017, Turner used his Skype account, philburtun79, to contact a known trafficker in the Philippines in order to pay for a live stream of the sexually explicit contact of minors. Specifically, the following excerpts of a live chat were captured by Skype:

| | |
|---|---|
| TURNER | who is available today? |
| TRAFFICKER | I can u the girls u like |
| TRAFFICKER | trust me |
| TURNER | how much? |
| TRAFFICKER | For 2? |
| TURNER | and when? |
| TURNER | yes |
| TRAFFICKER | 40 each |
| TRAFFICKER | today 5 pm |
| TURNER | 80 at 5? |
| TRAFFICKER | Ok |
| TRAFFICKER | yes |

Rev. August 2018

| | |
|---|---|
| TRAFFICKER | ok 80 for 2 |
| TRAFFICKER | Western? |
| TURNER | Worldremit [money transfer platform] |
| TRAFFICKER | ok |
| TURNER | ok? |
| TURNER | city? |
| TRAFFICKER | Tarlac [city in the Philippines] |
| TURNER | 19078241 [World Remit Transaction #] |
| TRAFFICKER | philip turner? |
| TURNER | who will you bring me? |
| TRAFFICKER | will pick them up after school |
| TRAFFICKER | thats why at 5 |
| TRAFFICKER | u will like them for sure |
| TURNER | 12? |
| TRAFFICKER | yes thats their age |
| TURNER | do you know who will be in show? or are you trying for whoever is available? |
| TRAFFICKER | i have one for sure ill just find someone to join her |
| TRAFFICKER | invite her classmate |
| TURNER | ok. who is for sure? |
| TRAFFICKER | a grade 6 student it is my friends daughter |
| TURNER | may I please see a pic? |
| TRAFFICKER | im not sure if i have a pic of her here |
| TRAFFICKER | better see her later |
| TRAFFICKER | u will like her promise |
| TRAFFICKER | Its 5 pm |
| TURNER | hi |
| TRAFFICKER | Ok let me call her back |
| TRAFFICKER | Ok shes here |
| TRAFFICKER | u ready |
| TURNER | yes. |

| | |
|---|---|
| TURNER | hi |
| TRAFFICKER | see the 12 at the back |
| TURNER | yes |
| TRAFFICKER | u like her? |

| | |
|---|---|
| TURNER | yes |
| TRAFFICKER | great |
| TRAFFICKER | then i leave the two of them with you now |
| TRAFFICKER | enjoy |
| TURNER | hi |
| TURNER | what's your name? |
| CHILD/CHRISTINE | hello |
| CHILD/CHRISTINE | hear us? |
| TURNER | I can hear you |
| TURNER | hi cristine |
| CHILD/CHRISTINE | christine |
| TURNER | and your friend? |
| CHILD/CHRISTINE | jopay |
| CHILD/CHRISTINE | ready? |
| TURNER | yes |
| TURNER | Christine, take off jopay's shirt |
| CHILD/CHRISTINE | mmm |
| TURNER | now her shorts |
| TURNER | now her panties |
| TURNER | and her bra |
| CHILD/CHRISTINE | mmmmm |
| TURNER | jopay, take off Christine's clothes. |
| CHILD/CHRISTINE | then? |
| TURNER | keep going |
| TURNER | jopay, lick Christine's nipples |
| TURNER | Christine, finger jopay's pussy |
| TURNER | lick jopay's pussy |
| CHILD/CHRISTINE | yummy bb |
| TURNER | Christine, can you pee on jopay? |
| CHILD/CHRISTINE | ok |
| TURNER | pee on Christine. |
| CHILD/CHRISTINE | ok bb |
| TURNER | pee on her tits |
| CHILD/CHRISTINE | see? |
| TURNER | yes |
| CHILD/CHRISTINE | do u like it/ |
| CHILD/CHRISTINE | ? |
| TURNER | I want to see both of you in doggy. |
| TURNER | rub each other's pussies |

Rev. August 2018

Group Two – Sexual Exploitation of a Minor and Coercion and Enticement – November 30, 2017 (Counts 2 and 7)

On November 30, 2017, Turner used his Skype account, philburtun79, to contact a known trafficker in the Philippines in order to pay for a live stream of the sexually explicit conduct of minors. Specifically, the following excerpts of a live chat were captured by Skype:

Trafficker: so u like Christine

TURNER: she is ok... not my favorite. if she has friends... better

Trafficker: With a new partner bb. yes she has a new one too, u never seen before

TURNER: pic?

(Trafficker sent an image file)

Trafficker: One with shades on head

TURNER: She is cute

Further into the chat, Turner agreed to a price of $60 for two children. One of the children, called Christine, then appeared in the live-stream and messaged with Turner. Turner messaged the following to Christine:

TURNER: Kristine, take off yumi's panties

Can jovie [trafficker] come in and help direct?

Kiss each other on cam please.

Kristine, please suck on her nipples

Yumi, lick Kristine's pussy

Kristine show doggy. Yumi spread her ass.

Can you spread the small ones ass? Please?
Grab her ass and spread it.

<u>Group Three – Sexual Exploitation of a Minor and Coercion and Enticement – January 14, 2018 (Counts 3 and 8)</u>

On January 14, 2018, Turner used his Skype account, philburtun79, to contact a known trafficker in the Philippines in order to pay for a live stream of the sexually explicit conduct of minors. Specifically, the following excerpts of a live chat were captured by Skype between Turner and a minor:

Child: see now?

TURNER: yes

Child: okie

TURNER: hi

Child: hi hunny what ply do u like?

TURNER: bianca, take off jelai's clothes

[Previously discussed between TURNER and the Trafficker during victim selection, Bianca is indicated to be about 13 years old. Jelai's age is not indicated, however, based on the conversation, TURNER appears to be familiar with Jelai.]

TURNER: jelai, finger bianca's pussy, kiss each other

Child: ok hun mmm

TURNER: jelai, suck on bianca's nipples

Child: mmmmm

TURNER: can you pee on each other?

Child: jail said she don't have a pee

TURNER: and you? Can you pee?

Child: yes I'll try hun

TURNER: ok

Child: where I pee?

TURNER: face and tits

Child: u see hun?

TURNER: very nice

Child: mmmmm yes" "what next ?

TURNER: wait til she comes back…

Child: shes here

TURNER: jalai in doggy, bianca finger her pussy, can you 69

Child: ok hunny

TURNER: rub each other's pussies

Child: ok

TURNER: rub your clits. And tell me I am a slut. ty [thank you]

Group Four – Sexual Exploitation of a Minor and Coercion and Enticement – January 19, 2018 (Counts 4 and 9)

On January 19, 2018, Turner used his Skype account, philburtun79, to contact a known trafficker in the Philippines in order to pay for a live stream of the sexually explicit conduct of minors. Turner and the trafficker settled on a price of $60, and Turner sent payment via World Remit. The trafficker told Turner one of the minors to be live streamed was Bianca, about 13 years old, and another girl. Specifically, the following excerpts of a live chat were captured by Skype of Turner's texts to the minor during the live stream:

TURNER: bianca, take off jelai's clothes

jelai, take off bianca's clothes

french kiss each other

can jelai put dildo in bianca's pussy?

can jelai pee on bianca

can bianca pee on jelai?

can jelai finger bianca's ass?

finger her pussy...

Rev. August 2018

[explicit content involving minors omitted]

Group Five – Sexual Exploitation of a Minor and Coercion and Enticement – March 6, 2018 (Counts 5 and 10)

On March 6, 2018, Turner used his Skype account, philburtun79, to contact a known trafficker in the Philippines in order to pay for a live stream of the sexually explicit conduct of minors. Turner and the trafficker settled on a price of $60, and Turner sent payment via World Remit. Specifically, the following excerpts of a live chat were captured by Skype of Turner's texts to the minor during the live stream:

TURNER: [explicit content involving minors omitted]

Group Six – Receipt of Child Pornography and Child Pornography (Counts 11 to 15):

Investigators obtained a search warrant for Turner's Microsoft account and located several images of child pornography that were received by Turner from the known trafficker in the Philippines of some of the minors featured in the live stream shows, including the following:

On October 9, 2017, Turner received an image file, titled o-sa-d1-abfec, that depicted two Filipino minor females believed to be between 9 and 12 years old. One of the minors is wearing only a small bra and is nude from the waist down displaying her bare pubic area and genitals. The other minor's genitals are exposed.

On November 1, 2017, Turner received the following two image files depicting Filipino minors:

> File name 0-sa-d4-53a: An image file that depicts two nude minor females visible from the waist up. One of the minors is licking the nipple of the other. The two minors are believed to be between 10-13 years old.
>
> File name 0-sa-d4-e4040: An image file that depicts two minor females who are both naked. Both minors are depicted from the rear, on their hands and knees, displaying their bare genitals and anus. The minors are believed to be between the ages of 10-13 years old.

On December 28, 2017, Turner received an image file, titled o-sa-d3-14cc, that depicts two minor Filipino females who are both naked. One minor appears to be placing her mouth on the breast of the other minor. The minors are believed to be between the ages of 10-13 years old.

On October 28, 2025, a federal warrant was executed at Turner's Anne Arundel County, Maryland residence. A Silver HP Laptop, Model Serial Number 5CD136D517 manufactured outside of Maryland, was seized. The laptop was opened to Turner's Skype account, and a forensic analysis revealed that Turner had just downloaded a trove of child pornography using the Tor network between October 11 and October 21, 2025. This collection of child pornography included images of prepubescent female engaged in sex acts and totaled well over 600 images.

The Skype accounts used by Turner to receive child pornography and to coerce and entice minors and their traffickers to engage in sexually explicit conduct required the use of the internet, a facility and means of interstate commerce. Further, Turner coerced and enticed the minors and their traffickers, knowing he could have been charged with a criminal offense for that activity.

SO STIPULATED:

Colleen Elizabeth McGuinn
Assistant United States Attorney

Rev. August 2018

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

06-30-26
Date

Philip Andrew Turner
Defendant

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

6/30/26
Date

Jonathan Hettleman, Esq.
Counsel for Defendant